# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## JEFFERSON COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

ZAKARY D. YEAGER,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 18 JE 0008**

---

Criminal Appeal from the
Court of Common Pleas of Jefferson County, Ohio
Case No. 17 CR 156

**BEFORE:**
David A. D'Apolito, Cheryl L. Waite, Carol Ann Robb, Judges.

---

**JUDGMENT:**
Affirmed

---

*Atty. Jane M. Hanlin*, Jefferson County Prosecutor and *Atty. Frank J. Bruzzese* Assistant Prosecuting Attorney, Jefferson County Justice Center, 16001 State Route 7, Steubenville, Ohio  43952, for Plaintiff-Appellee and

*Atty. Bruce M. Clark,* The Bruce Clark Law Firm, LLC, P.O. Box 191, Mt. Pleasant, Ohio 43939, for Defandant-Appellant.

.

Dated: March 25, 2019

_____

**D'APOLITO, J.**

**{¶1}** Appellant Zakary D. Yeager appeals his convictions and sentence following a jury trial in the Jefferson County Court of Common Pleas for one count of aggravated burglary in violation of R.C. 2911.11(A)(1), a felony of the first degree (Count One); one count of Robbery in violation of R.C. 2911.02 (A)(2) & (B), a felony of the second degree (Count Two); one count of Theft in violation of R.C. 2913.02(A), a misdemeanor of the first degree (a lesser included offense of the charged crime of Robbery in Count Three); one count of Robbery in violation of R.C. 2911.02(A)(2) & (B), a felony of the second degree (Count Four); and one count of Robbery in violation of R.C. 2911.02(A)(3) & (B), a felony of the third degree (Count Five).

**{¶2}** In his first assignment of error, Appellant contends that there was insufficient evidence to sustain his conviction for aggravated burglary because conflicting testimony was offered by the state regarding the element of trespass. Appellant argues that his conviction for aggravated burglary is not supported by the manifest weight of the evidence for the same reason. In his second assignment of error, Appellant argues that the trial court committed plain error when it admitted Facebook messages into evidence because they were not properly authenticated. In his third assignment of error, Appellant contends that his trial counsel provided ineffective assistance because: (1) he failed to object to the admission of the Facebook messages; (2) he asserted a summary Rule 29 motion without any reference to the testimony offered by the state; and (3) he conceded that Appellant committed an assault on the evening in question. In his fourth assignment of error, Appellant argues that both of his robbery convictions should have been merged with his aggravated burglary conviction at sentencing. For the following reasons, we find that Appellant's assignments of error are meritless and the judgment of the trial court is affirmed.

<u>Facts and Procedural History</u>

**{¶3}** Appellant's convictions are predicated upon an incident that occurred in the

early morning hours of June 18, 2017 at the residence of Amanda Poch.  The state offered the testimony of six witnesses:  Poch, who was present at her home that morning; her boyfriend, Jesse Cook, who was also present; Steubenville City patrolman Matthew Bailey, who responded to the 9-1-1 call placed that morning; Appellant's girlfriend, Marlana Hart, who was present that evening and testified pursuant to a plea agreement with the state; and the victims' mothers, Christina Poch and Annette Stewart, who were not present in the home on June 18, 2017, but provided testimony about events leading up to and following the morning in question.

{¶4}    Poch testified that Appellant and Hart had been frequent overnight guests in Poch's home in the two months prior to June 18, 2017.  Poch conceded that she and Cook, and Appellant and Hart were addicted to and regularly abused illegal drugs in Poch's home.

{¶5}    However, on June 16, 2017, two nights prior to the morning in question, Poch discovered Appellant and Hart using drugs in one of the children's bedrooms, so Poch instructed them to leave.  The couple refused to go, so Poch called her mother, who convinced Appellant and Hart to collect their belongings and leave the residence without incident.  Poch's mother corroborated the foregoing testimony.  Poch further testified that the couple returned the following day to apologize, but she did not allow them back into her home.

{¶6}    Poch, Cook, and Poch's three young children were asleep on the floor of the living room on June 18, 2017.  She was awakened around 3:00 a.m. by Appellant and Hart, who were pounding on the door.  Appellant claimed that he had lost his Xanax in Poch's driveway.  Poch followed the couple to the driveway and allowed Hart to use the flashlight feature on Poch's mobile phone to search for Appellant's medication.

{¶7}    While Poch, Appellant, and Hart were in the driveway, Appellant began yelling that Poch stole his Xanax.  Realizing the missing medicine story was a ruse, Poch retrieved her phone from Hart and hurried to the front door.  Poch entered her home and locked the screen door behind her, then braced the front door, because Appellant was in close pursuit. Poch verbally refused Appellant entrance into her home and screamed that he should leave.  Instead, Appellant accessed a small tear in the screen, tore a much larger hole in order to gain access to the lock, unlocked the screen door, and pushed his

way into the residence.  Poch specifically testified that she was "leaning on the front door" when Appellant entered her home without permission.  (Trial Tr. 128).

{¶8}     Appellant barged into Poch's living room and continued to loudly accuse her of stealing his Xanax.  He grabbed her purse and emptied the contents, then removed Poch's medication (Subutex), her phone, and $100.00 from the contents strewn on the living room floor.  When Poch demanded that Appellant return her possessions, Appellant responded, "I'll give you your stuff back when you give me mine."  (*Id.*)

{¶9}     When she attempted to retrieve her possessions, Appellant pulled her by the hair, swung her in the air, and threw her to the ground.  Appellant began punching her in the face, and Hart started kicking her in her side.

{¶10}  The physical attack awakened Cook and the children.  Cook intervened, yelling "get off my girl."  Cook struck Appellant, and a fist fight ensued between them, which migrated into the kitchen.  In the meantime, Poch was able to push Hart to the ground, but when Poch attempted to reach her daughter, who was crying, Hart pulled Poch back to the ground and began to repeatedly strike her in the head with a plastic toy.

{¶11}  About that same time, Cook knocked Appellant to the kitchen floor. Hart took a blue iPhone, which Cook's mother had loaned to him, then Hart yelled, "Zac, grab [Cook's other] phone, they're going to call 9-1-1." (*Id.* at 134).  Hart fled the scene with the blue iPhone, leaving Poch alone in the living room, with her crying daughter in her arms.

{¶12}  Cook left the residence at that same time and ran to a neighbor's home to call 9-1-1.  As a consequence, Poch was left alone in her home with Appellant and her children.  Poch testified that Appellant arose from the kitchen floor, retrieved the money, medicine, and phone, and walked through the living room toward the front door.  Appellant gave Poch a "death stare" and punched her in the face, while she held her daughter in her arms, then he fled.  (*Id.* at 135).

{¶13}  Poch testified that she received two Facebook communications at 5:23 a.m. and 11:36 a.m., respectively, from Hart's Facebook Messenger.  Poch further testified that she and Jesse frequently used Hart's Facebook account as a mode of communication with Appellant and Hart.  The 11:36 a.m. message read, in its entirety, "Sry i hit u jesse she is the one that took them i shouldnt of hit u but she deffently got my

pills[.]" (*Id.* at 145; State Exh. 5).

**{¶14}** On cross-examination, defense counsel inquired about several discrepancies between Poch's direct testimony and her testimony at the preliminary hearing on November 9, 2017. Poch conceded on cross-examination that she did not go to the hospital following the incident because she was aware that a toxicology screen would reveal the presence of crack cocaine in her blood.

**{¶15}** Cook testified that he was awakened in the early morning hours of June 18, 2017 by an attack on Poch perpetrated by Appellant and Hart. Cook testified that he intervened in order to protect Poch. Cook struck Appellant, and the two men engaged in a fist fight, during which Appellant punched Cook in the face and knocked out his front tooth. Cook testified that Hart was not involved in the altercation between Appellant and Cook and that Hart never touched him that evening.

**{¶16}** According to Cook, everything "seemed to calm down" when Poch yelled, "My daughter's in here." Because Poch was more severely injured than Cook, he decided that he should run to the neighbor's house to call 9-1-1.

**{¶17}** On the recording of the 9-1-1 call, Cook states, "[t]hey just busted through the door, hit me, hit her, took her – took her prescription medication and her iPhone." (Tr., p. 203, State's Exh. 6). Cook further states that "[Poch] got the worst of it" and Poch can be heard crying in the background and saying "I'm bleeding." (*Id.* at 204, State's Exh. 6). According to Cook's testimony, Appellant took Subutex that belonged to Cook from the contents of Poch's purse, in addition to Poch's Subutex.

**{¶18}** On cross-examination, defense counsel noted discrepancies between Cook's trial testimony and his testimony at the November 9, 2017 hearing, where he testified under oath that he observed Appellant in the driveway, and that he saw Appellant push in the front door and attack Poch. Cook conceded during cross-examination that he was awakened by the attack on Poch and that he lied at the preliminary hearing about witnessing any of the prior events.

**{¶19}** Hart testified on behalf of the state, pursuant to a plea agreement executed the previous week. She had entered guilty pleas to burglary and theft but had not been sentenced when she testified at Appellant's trial. Hart was pregnant with Appellant's child on June 18, 2017, and had given birth to their daughter prior to Appellant's trial.

{¶20} Despite the fact that she had not been sentenced, Hart denied that Appellant had engaged in any of the conduct described by Poch and Cook. She also denied in engaging in any criminal activity on the night in question, claiming that she had admitted to the crimes simply to avoid a lengthy jail sentence that would take her from her infant daughter. She testified that Poch invited her and Appellant into the residence that morning. She conceded that she struck Poch with her hand, but testified that she acted in defense of Appellant because Poch attacked him.

{¶21} Hart also admitted that Cook and Appellant fought, but she denied that Appellant stole anything. She denied taking a mobile phone from the home, despite her prior guilty plea, which required restitution of the value of two mobile phones, as well as the medicine and money stolen from Poch and Cook. Hart testified that Poch and Cook attacked Appellant, and, that in her eagerness to escape the situation, she inadvertently walked out with the phone in her hand.

{¶22} Cook's mother testified that she was contacted by Appellant after the incident and she asked him if he was speaking to her on the blue phone. She told Appellant that the blue phone belonged to her and she would appreciate its return. Although Appellant agreed to return the phone and made arrangements to meet her in the parking lot at her place of employment, Appellant never returned the phone. On cross examination, Cook's mother testified that she recognized Appellant's voice on the telephone because she had spoken with him numerous times.

{¶23} Patrolman Bailey testified that he was dispatched to Poch's home after being advised that Appellant and Hart had broken into the residence and assaulted two victims. While taking Poch's verbal statement, Patrolman Bailey observed that Poch's face was swollen and bruised on the right side, and her nose and lip were bloodied. He testified that she was scared, very upset, and crying. Patrolman Bailey further observed the contents of Poch's purse strewn on the floor.

{¶24} At the conclusion of the state's case, defense counsel moved for a judgment of acquittal on the aggravated burglary charge, summarily asserting that the evidence construed most strongly in favor of the state failed to sufficiently provide that a theft offense had occurred or that the offender inflicted, attempted to inflict, or threatened to inflict physical harm. Defense counsel further asserted that the evidence was not

sufficient to prove robbery in the second or third degrees with regard to each victim. The trial court overruled the motion. The defense did not present any witnesses and rested its case.

**{¶25}** The jury returned a verdict of guilty on each of the charges, with the exception of the robbery charge in Count Three, for which the jury returned a guilty verdict on the lesser-included offense of theft. Counts Two and Three, and Counts Four and Five were merged at sentencing. The state elected to proceed on Counts Two and Four, and the trial court imposed a sentence of eight years for Count One, two years for Count Two, and three years for Count Four, to be served consecutively, for an aggregate sentence of thirteen years. (5/8/18 J.E.) This timely appeal followed.

<u>Criminal Statutes</u>

**{¶26}** R.C. 2911.11 defines "aggravated burglary" and reads, in pertinent part:

(A) No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply:

(1) The offender inflicts, or attempts or threatens to inflict physical harm on another[.]

**{¶27}** R.C. 2911.02 defines "robbery" and reads, in pertinent part:

(A) No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following:

* * *

(2) Inflict, attempt to inflict, or threaten to inflict physical harm on another;

(3) Use or threaten the immediate use of force against another

* * *

(B) Whoever violates this section is guilty of robbery. A violation of division (A)(1) or (2) of this section is a felony of the second degree. A violation of division (A)(3) of this section is a felony of the third degree.

<u>Case No. 18 JE 0008</u>

**{¶28}** R.C. 2913.02 defines "theft" and reads, in its entirety:

(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:

(1) Without the consent of the owner or person authorized to give consent;

(2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent;

(3) By deception;

(4) By threat;

(5) By intimidation.

Analysis

**{¶29}** Appellant asserts three assignments of error:

Assignment of Error No 1:

The court committed reversible error by denying defendant's motion for acquittal based upon either the weight or sufficiency of the evidence.

**{¶30}** Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the verdict. *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). In essence, sufficiency is a test of adequacy. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). Whether the evidence is legally sufficient to sustain a verdict is a question of law. *Id.* In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Smith*, 80 Ohio St.3d at 113.

**{¶31}** In determining whether a verdict is against the manifest weight of the evidence, we review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins*, 78 Ohio St.3d at 387. "Weight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.' " *Id.* In making our determination, we

do not view the evidence in a light most favorable to the prosecution but consider and weigh all of the evidence produced at trial. *Id.* at 390.

**{¶32}** A conviction will only be reversed as against the manifest weight of the evidence in exceptional circumstances. *Id.* The trier of fact is in a better position to determine credibility issues, because the trier of fact personally viewed the demeanor, voice inflections and gestures of the witnesses. *State v. Hill*, 75 Ohio St.3d 195, 204, 661 N.E.2d 1068 (1996); *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). Accordingly, we have held that "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe, we must accede to the jury." *State v. Dickson*, 7th Dist. No. 12 CO 50, 2013-Ohio-5293, ¶ 25 (internal quotation marks omitted).

**{¶33}** A reviewing court should not interfere with witness credibility and factual determinations of the jury unless the record demonstrates that a reasonable juror simply could not have found the witness to be credible. *State v. Bland,* 7th Dist. No. 14 MA 9, 2015-Ohio-1797, ¶ 20, citing *State v. Mock,* 187 Ohio App.3d 599, 2010-Ohio-2747, 933 N.E.2d 270, ¶ 40 (7th Dist.) The testimony of a single witness, if believed by the trier of fact, is sufficient to support a conviction. *Mock,* supra at ¶ 41, citing *State v. Cunningham,* 105 Ohio St.3d 197, 2004-Ohio-7007, 824 N.E.2d 504, ¶ 51-57.

**{¶34}** Appellant argues that Poch's testimony regarding Appellant's forcible entrance into her home was directly contradicted by Hart, who testified that Poch invited the couple into the residence on June 18, 2017. Appellant further argues that Poch's admission that she had crack cocaine in her bloodstream on the evening in question makes her testimony inherently unreliable. As a consequence, Appellant contends that the trial judge erred in denying the Rule 29 motion for acquittal, and the jury erred in convicting Appellant of aggravated burglary.

**{¶35}** To the contrary, viewing the evidence in a light most favorable to the state, Poch's testimony, if believed, was sufficient to establish the trespass element of aggravated burglary. With respect to Appellant's manifest weight argument, we are obligated to accede credibility determinations to the jury where, as here, two conflicting albeit believable versions of the evening's events were offered at trial. Accordingly, we find there was sufficient evidence to sustain the trespass element of Appellant's

aggravated burglary conviction, and, further, Appellant's conviction is supported by the manifest weight of the evidence. As a consequence, Appellant's first assignment of error has no merit.

Assignment of Error No 2:

The trial court committed plain error by allowing the introduction of Facebook information without the appropriate authentication.

**{¶36}** Appellant concedes that he did not preserve his evidentiary challenge to the admission of the Facebook messages at trial, and, therefore, our review is limited to plain error. "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). An appellate court's invocation of plain error requires the existence of an obvious error which affected the outcome of the proceedings. *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 22.

**{¶37}** "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Murphy*, 91 Ohio St.3d 516, 532, 747 N.E.2d 765 (2001). Recognition of plain error is discretionary with the reviewing court; it is not mandatory. *Rogers*, at ¶ 22-23.

**{¶38}** Appellant contends that the state failed to properly authenticate the Facebook messages. Because Hart testified on behalf of the state, Appellant argues that the state had the opportunity to authenticate the Facebook messages through Hart, who was the Facebook account holder. As the state failed to do so, Appellant argues the admission of the Facebook messages constitutes plain error.

**{¶39}** We have previously held that photographs of text messages can be admissible as an admission by a party-opponent under Evid.R. 801(D)(2)(a) if they are properly authenticated. *State v. Shaw*, 7th Dist. No. 12 MA 95, 2013-Ohio-5292, 4 N.E.3d 406, ¶ 43. In *Shaw*, we cited with favor the Eighth District's opinion in *State v. Roseberry*, 197 Ohio App.3d 256, 2011-Ohio-5921, 967 N.E.2d 233, wherein the court noted that the photographs of text messages are typically authenticated, introduced, and received into evidence through the testimony of the recipient of the messages. *Shaw* at ¶ 42, citing *Rosenberry* at ¶ 75.

Case No. 18 JE 0008

**{¶40}** Evid.R. 901 provides a liberal standard regarding the authentication of evidence. *State v. Black*, 7th Dist. No. 16 MA 0085, 2018-Ohio-1342, 109 N.E.3d 716, ¶ 11. Pursuant to subsection (A) of the rule, the requirement for admissibility "is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Testimony by a witness with knowledge "that a matter is what it is claimed to be," is an acceptable method of authentication. Evid.R. 901(B)(1). Evid.R. 901(B)(1) has been interpreted by courts to allow "any competent witness who has knowledge that a matter is what its proponent claims may testify to such pertinent facts, thereby establishing, in whole or in part, the foundation for identification." *Black* at ¶ 14, quoting *TPI Asset Mgt. v. Conrad-Eiford*, 193 Ohio App.3d 38, 2011-Ohio-1405, 950 N.E.2d 1018, ¶ 15 (2d Dist.).

**{¶41}** Here, Poch, one of the recipients of the messages, testified that they were transmitted by way of Hart's Facebook Messenger account, which bears her name and photograph. Poch further testified that the account was a common method of communication between Poch and Cook and Appellant and Hart.

**{¶42}** In addition to Poch's testimony, the content of the message and the undisputed evidence adduced at trial support the conclusion that the message at issue was sent by Appellant via Hart's Facebook account. First, Cook testified that Hart was not involved in the fist fight, only Appellant. Cook conceded at trial that Hart did not touch him. Likewise, Hart testified that she struck Poch, and only Poch, in defense of Appellant. It is also undisputed that Appellant, not Hart, accused Poch of stealing his Xanax. There is no evidence in the record to suggest that the Xanax at issue belonged to anyone other than Appellant. With the foregoing evidence in mind, the message, "Sry i hit u jesse she is the one that took them i shouldnt have hit u but she deffently got my pills[,]" can rationally be attributed to one person, Appellant.

**{¶43}** However, even assuming arguendo that the trial court admitted the Facebook messages in error, the error was harmless. Poch's injuries and her testimony were corroborated by the testimony of Cook, Martin, the Steubenville police officer who responded to the 9-1-1 call, the recording of the 9-1-1 call itself, as well as the testimony of both of the victims' mothers. In other words, Appellant has failed to demonstrate that the outcome of the trial would have been different but for the admission of the Facebook

messages. Accordingly, we find that Appellant's second assignment of error has no merit.

Assignment of Error No 3:

Defendant's trial counsel was ineffective, thereby depriving him of the assistance of counsel guaranteed him by the Sixth Amendment.

**{¶44}** To prove a claim of ineffective assistance of counsel, the defendant must show both deficient performance and resulting prejudice. *Strickland v. Washington,* 466 U.S. 668, 684, 104 S.Ct. 2052 (1984). Deficient performance means that claimed errors were so serious that the defense attorney was not functioning as the counsel that the Sixth Amendment guarantees. *State v. Cook,* 65 Ohio St.3d 516, 524, 605 N.E.2d 70 (1992). Prejudice means that counsel's errors compromised the reliability of the trial. *Id.*

**{¶45}** Trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. *Id.* Furthermore, instances of debatable trial strategy very rarely constitute ineffective assistance of counsel. *State v. Telego,* 7th Dist. No. 16 MA 0171, 2018-Ohio-254, 104 N.E.3d 190, ¶ 30. Although a trial counsel's strategy may be questionable in a case, the court "must defer to [trial counsel's] judgment." *State v. Clayton,* 62 Ohio St.2d 45, 49, 402 N.E.2d 1189 (1980). Trial counsel's strategic choices must be accorded deference and cannot be examined through the distorting effect of hindsight. *State v. Conway,* 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 115, citing *Strickland, supra* at 689. In other words, debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel, even if, in hindsight, it looks as if a better strategy was available. *State v. Thomason,* 109 N.E.3d 729, 2018-Ohio-1228 (2nd Dist.), ¶ 14, citing *State v. Cook,* 65 Ohio St.3d 516, 524, 605 N.E.2d 70 (1992).

**{¶46}** Appellant contends that prejudicial error occurred as a result of defense counsel's failure to object to the admission of the Facebook messages into evidence. However, we have already determined that Appellant cannot show that the admission of the messages was outcome determinative.

**{¶47}** Appellant next argues that defense counsel's comments in his opening and closing statements, that the jury would likely determine an assault was committed that evening, prejudiced his defense. In fact, defense counsel conceded that there was an assault, but "[w]ho assaulted who in this convoluted drugged-up mess, who knows * * *"

(Tr. 101). Defense counsel did not concede that Appellant had committed an assault, but that the actual perpetrators and victims could not be proven beyond a reasonable doubt based on the conflicting testimony adduced at trial. Because of the injuries sustained by the victims, defense counsel's concession constitutes trial strategy that must be accorded deference on review.

**{¶48}** Finally, Appellant contends that defense counsel failed to provide any evidentiary support for the motion for acquittal at the close of the State's case. Appellant argues that if defense counsel had provided a thorough argument in support of the motion, it would have been granted. Having reviewed the record, we find there was sufficient evidence to sustain Appellant's convictions. As a consequence, his ineffective assistance of counsel claim based on the Rule 29 motion must fail.

**{¶49}** In summary, Appellant has failed to demonstrate deficient performance by his trial counsel. Even assuming deficient performance, Appellant has failed to show resulting prejudice. As a consequence, Appellant's third assignment of error is meritless.

Assignment of Error No 4:

The trial court committed plain error by failing to merge Count 4 and Count 2 into Count 1.

**{¶50}** Appellant argues that the trial court committed plain error when it failed to merge both robbery convictions with the aggravated burglary conviction. The Ohio Supreme Court has recognized that the imposition of multiple sentences for allied offenses of similar import is plain error. *State v. Underwood,* 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, ¶ 31.

**{¶51}** The state argues that the robbery offenses against two separate victims constitute two separate crimes which do not merge with each other as allied offenses for sentencing purposes. See *State v. Tapscott,* 7th Dist. No. 11 MA 26, 2012-Ohio-4213, 978 N.E.2d 210, ¶ 33-46. The state further argues that the crimes of aggravated burglary and robbery caused separate, identifiable harm, were committed separately, and were committed with separate animus.

**{¶52}** R.C. 2941.25 codifies the General Assembly's intent to prohibit or allow multiple punishments for two or more offenses resulting from the same conduct. *State v. Washington,* 137 Ohio St.3d 427, 2013-Ohio-4982, 999 N.E.2d 661, ¶ 11. R.C. 2941.25

provides:

> (A)   Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
>
> (B)   Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

**{¶53}**   An accused may be convicted and sentenced for multiple offenses if:   (1) the offenses each caused separate, identifiable harm; (2) the offenses were committed separately; or (3) the offenses were committed with separate animus.   *State v. McBride,* 7th Dist. No. 16 MA 0002, 2017-Ohio-4281, ¶ 25, citing *State v. Ruff,* 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 25.   The *Ruff* Court observed:

> When a defendant's conduct victimizes more than one person, the harm for each person is separate and distinct, and therefore, the defendant can be convicted of multiple counts.   Also a defendant's conduct that constitutes two or more offenses against a single victim can support multiple convictions if the harm that results from each offense is separate and identifiable from the harm of the other offense. We therefore hold that two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable.

*Ruff* ¶ 26.

**{¶54}**   In *Ruff*, the Ohio Supreme Court reaffirmed its holding in *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, that the emphasis is on the defendant's conduct, rather than an abstract comparison of the elements of the subject offenses in determining

the existence of allied offenses. *Id.* at ¶ 16, 26. "In determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must evaluate three separate factors – the conduct, the animus, and the import." *Id.*, paragraph one of the syllabus. Further, "[t]wo or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) * * * if the harm that results from each offense is separate and identifiable." *Id.*, paragraph two of the syllabus

**{¶55}** There is no question here that the two robbery convictions in Counts Two and Four involved separate victims. Accordingly, Appellant's robbery convictions victimized more than one person and constitute separate and distinct offenses.

**{¶56}** At oral argument, counsel for Appellant asserted that there can be no overlap in the elements of two convictions, otherwise they must be considered allied offenses of similar import. He cited *State v. Wright*, 2nd Dist. No. 24276, 2011-Ohio-4874 for the proposition that the physical harm/use of physical force in this case constituted a single course of conduct. In *Wright*, the victim testified that Wright pulled her into the kitchen, then pushed her head into the wall several times. Next, Wright ordered her to get on her knees, and he told her not to move or he would kill her. During this time, Wright was holding an object to the victim's neck, which she believed to be a gun. *Id.* at ¶ 3. The *Wright* Court provided the following analysis of the foregoing facts:

> Initially, we will consider whether aggravated burglary and robbery are allied offenses of similar import. In this matter, the evidence demonstrated that Wright trespassed into the Smiths' home in order to commit a theft offense. Once inside the home, he encountered [the victim] and inflicted, as well as threatened to inflict, physical harm on her to further facilitate his commission of a theft offense. Wright's actions with regard to these offenses constituted a single course of conduct.

> It could be argued that Wright intended to enter the house only to steal property and that he committed a separate offense of robbery when he threatened [the victim]. However, he was not charged and convicted of burglary, but aggravated burglary, which requires the infliction, or threatened infliction, of physical harm on another.

Case No. 18 JE 0008

*Id.* at ¶ 71-72

**{¶57}** The facts in this case are clearly distinguishable. The offense of aggravated burglary was completed when Appellant forced his way into Poch's residence and assaulted her, that is, the initial attack when she attempted to retrieve her belongings from Appellant after he removed them from the contents of her purse.

**{¶58}** After Hart fled, and Cook ran to the neighbor's house to call 9-1-1, Appellant fled through the living room. As he walked from the kitchen into the living room, he gathered the money, medication, and phone, then he punched Poch one final time, to clear his path to the front door.

**{¶59}** The physical attack element of the aggravated burglary conviction was satisfied by Appellant's first assault on Poch, which ended when the fist fight ensued between Appellant and Cook. The robbery offense committed against Poch consisted of Appellant's theft of Poch's property, coupled with the infliction of physical harm, the separate and final punch to her face during his attempt to flee immediately after the offense. See *State v. Fields,* 12th Dist. No. CA2014-03-025, 2015-Ohio-1345, ¶ 4-18 (if one offense is completed before the other begins, the offenses are considered separately for sentencing purposes even though the two offenses may have been committed in close proximity in time).

**{¶60}** In summary, the robbery convictions in this case caused separate, identifiable harm to two victims. The aggravated burglary and robbery convictions were committed separately and committed with separate animus based on the record before us. Accordingly, we find that Appellant's fourth assignment of error is meritless.

Conclusion

**{¶61}** Based upon the foregoing analysis, the judgment entry of the trial court is affirmed.

Waite, P.J., concurs.

Robb, J., concurs.

Case No. 18 JE 0008

---

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Jefferson County, Ohio, is affirmed. Costs are waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**