JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendant-appellant Rodney Grant appeals from the trial court's judgment, entered after a jury verdict, finding him guilty of receiving stolen property, robbery, three counts of aggravated robbery, and felonious assault in Case No. 492247 and one count of aggravated robbery in Case No. 494118, and sentencing him to 31 years incarceration. We affirm.
 {¶ 2} The charges against Grant stemmed from a car theft, a series of armed robberies, and a shooting that occurred in Cleveland and Lakewood, Ohio between December 3 and December 20, 2006.
 {¶ 3} The sequence of events began with the theft of a gold Jeep Cherokee from Daniel Cabat on December 3, 2006. That same day, after Tamara Diaz cashed a check at a check cashing store in Cleveland, a man held a gun to her neck and told her, "If you move, I'll shoot." The man stole her purse and drove away in a gold Jeep Cherokee. Later that day, as Kerrie Reynolds walked up the sidewalk to her apartment in Lakewood, Ohio, she noticed a Jeep Cherokee parked in the driveway. A man outside her apartment building held the door open for her, then followed her into the building, pointed a gun at her, and demanded money. When Reynolds told him that she had no money, the man left. Reynolds identified Grant in court as the gunman. *Page 4 
 {¶ 4} Three days later, on December 6, 2006, Lindsay Emerson cashed 20 checks made out to her son Daniel Emerson at a Dave's Supermarket in Cleveland. She left the store with approximately $8,608 in cash and ten money orders totaling $540. When she and her brother arrived home, a man approached them, pushed Emerson's brother down, and grabbed Emerson's purse, which contained the cash and money orders. Emerson testified that the man drove off in a Jeep Cherokee, with a license plate number beginning with "DRM." The police later showed Emerson a video of persons entering and leaving the store that day and Emerson identified Grant from the video as the perpetrator.
 {¶ 5} On December 15, 2006, as John Lamb was walking towards his girlfriend's home in Cleveland after exiting his vehicle, he was confronted by a gunman who got out of a gold SUV and demanded his money, wallet, and briefcase. Lamb identified Grant in court as the gunman.
 {¶ 6} Five days later, on December 20, 2006, Michael Kincaid was driving home from work on Interstate 90. Kincaid testified at trial that when he pulled into the left-hand lane to pass a vehicle, a gold Jeep was "right on his bumper." Kincaid pulled back into the right-hand lane so the Jeep could go by. Kincaid testified that as the Jeep passed him, he made eye contact with the driver, who brandished a small black gun at him. Terrified, Kincaid pulled his car into another lane and ducked down in his car. The Jeep exited the highway, but then *Page 5 
re-entered the freeway and again pulled next to Kincaid. As Kincaid ducked down, he heard a gunshot. Kincaid then exited the highway and the Jeep proceeded on. Kincaid immediately called 911 and drove to the police station to give a description of the shooter. Several days later, Kincaid identified Grant as the shooter from a photo array.
 {¶ 7} At approximately 7 p.m. on December 20, 2006, the same day as the incident involving Kincaid, Regina Reighard and Olga Copan stopped at a check cashing store in Cleveland and then drove to a nearby restaurant. As they were getting out of the car in the parking lot of the restaurant, a male approached them, put a gun to Reighard's face, and demanded her money. After Reighard gave him her money, the gunman pointed the gun at Copan and demanded her money and cell phone. Copan complied and the gunman left in a gold Jeep. Reighard identified Grant as the perpetrator from a photo array.
 {¶ 8} Grant was subsequently charged in Case No. 492247 with one count of receiving stolen property (the Jeep), five counts of aggravated robbery, two counts of robbery, one count of felonious assault, and one count of having a weapon while under a disability. The robbery, aggravated robbery, and felonious assault charges all carried one-and three-year firearm specifications, as well as notice of prior conviction and repeat violent offender specifications. Grant was charged in Case No. 494118 with one count of aggravated robbery, with one-and *Page 6 
three-year firearm specifications, and notice of prior conviction and repeat violent offender specifications.
 {¶ 9} The trial court subsequently granted the State's motion to consolidate the cases for trial. It granted defense counsel's Crim. R. 29 motion for acquittal in part, and dismissed the firearm specifications from the robbery charges, as well as count six (aggravated robbery) and count ten (having a weapon while under a disability).
 {¶ 10} The jury subsequently found Grant not guilty of aggravated robbery against Tamara Diaz (count two) and not guilty of robbery against Daniel Emerson (count four), but guilty of the other charges. The trial court sentenced him to 25 years incarceration in Case No. 492247, consecutive to six years in Case No. 494118, for a total of 31 years.
Manifest Weight of the Evidence
 {¶ 11} A manifest weight challenge questions whether the State has met its burden of persuasion. State v. Thompkins (1997), 78 Ohio St.3d 380,390. When considering a manifest weight challenge, a reviewing court examines the entire record, weighs the evidence, and considers the credibility of the witnesses. State v. Thomas (1982), 70 Ohio St.2d 79,80. The court may reverse the judgment of conviction if it appears that the jury, in resolving conflicts in the evidence, "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Thompkins at 387. A *Page 7 
court should reverse a conviction as against the manifest weight of the evidence only in the most "exceptional case in which the evidence weighs heavily against the conviction." Id.
 {¶ 12} Under R.C. 2903.11(A)(2), regarding felonious assault, "no person shall knowingly * * * cause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance." The indictment specified that Grant used a firearm to cause or attempt to cause physical harm to Kincaid. Under R.C. 2923.11(B)(1), a firearm is "any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant."
 {¶ 13} Grant argues that his conviction for felonious assault against Michael Kincaid was against the manifest weight of the evidence because the State did not produce evidence that the gun was operable. He contends that Kincaid's testimony that he saw the driver of the gold Jeep brandish a small, black gun at him was insufficient to establish the gun was operable, because the gun Kincaid saw could merely have been "a well-constructed squirt gun." He contends further that Kincaid did not see Grant actually shoot the gun, but only heard a gunshot after he ducked down in his car, and there was no evidence that Kincaid's car sustained any damage from a bullet. Thus, Grant asserts, there was no evidence that the firearm was actually operable and, accordingly, his *Page 8 
conviction was against the manifest weight of the evidence. Grant's argument fails.
 {¶ 14} Kincaid testified that Grant twice pulled alongside him on the highway and each time aggressively brandished a gun at him, and that the second time Grant pulled next to him, he heard a gunshot. Circumstantial evidence may permit an inference which is sufficient to support a finding that an operable firearm was used in the commission of a felony.State v. Crump (Aug. 2, 1990), Cuyahoga App. No. 57348, citing State v.Gaines (1989), 46 Ohio St.3d 65. Although Kincaid did not see Grant shoot the gun, he twice saw Grant's aggressive behavior toward him and then heard a gunshot. This testimony permitted a reasonable inference by the jury that Grant used an operable firearm against Kincaid. Grant's first assignment of error is overruled.
Sufficiency of the Evidence
 {¶ 15} An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. *Page 9 
 {¶ 16} The mens rea for felonious assault is "knowingly." R.C. 2903.11(A). Grant argues that State failed to prove the mens rea for felonious assault, because without evidence that his gun was a real gun, the jury could not conclude that he knowingly intended to cause any type of harm to Kincaid. This argument fails because, as discussed above, since Kincaid heard a gunshot, the jury could reasonably infer the gun was real.
 {¶ 17} Grant next argues that even if the gun were real, the mere discharge of a firearm in this case does not satisfy the State's burden of proof on the "knowingly" element of felonious assault, because there was no evidence the gun was pointed at Kincaid when it was shot. This argument fails as well.
 {¶ 18} A person acts knowingly, regardless of his purpose, "when he is aware that his conduct will probably cause a certain result * * *." R.C. 2901.22(B). "The shooting of a gun in a place where there is a risk of injury to one or more person supports the inference that appellant acted knowingly." State v. Gregory (1993), 90 Ohio App.3d 124, 131, citingState v. Cartellone (1981), 3 Ohio App.3d 145, 148. Grant twice pointed a gun at Kincaid as he was driving on the highway. In light of Grant's aggressive behavior, and the risk of injury from shooting a gun near a moving car, the jury could reasonably infer that Grant knowingly intended to cause serious physical harm to Kincaid when he shot the gun. Grant's second assignment of error is therefore overruled. *Page 10 
 {¶ 19} Grant also argues the evidence was insufficient to sustain his conviction for receiving stolen property, because the State failed to demonstrate that the Jeep used in his crime spree was stolen. We disagree.
 {¶ 20} Cleveland police detective Michael Torok testified that as part of his investigation, he reviewed a police report regarding the theft of a gold Jeep Cherokee on December 2, 2006, from 806 W. 30th in Cleveland. The license plate number of the stolen vehicle was DRM 7439; its owner was Daniel Cabat. Cleveland police detective Keith Haven similarly testified that Cleveland police were aware that the Jeep was stolen from Daniel Cabat and it was being used in a series of crimes. Under the test for sufficiency of evidence set forth above, this testimony, if believed, was sufficient to establish that the Jeep was stolen. Contrary to Grant's argument, the State was not required to place the police report regarding the theft of the Jeep into evidence. Grant's third assignment of error is overruled.
 {¶ 21} Finally, Grant argues that the evidence was insufficient to support his conviction on count two: aggravated robbery upon Tamara Diaz. This argument is moot because the jury found Grant not guilty of this charge. Grant's fourth assignment of error is therefore overruled.
Ineffective Assistance of Counsel
 {¶ 22} Prior to trial, the trial court granted the State's motion to consolidate Case No. 494118, which charged Grant with one count of aggravated *Page 11 
robbery against Kerrie Reynolds in Lakewood, Ohio, with Case No. 492247, which charged Grant with the offenses that occurred in Cleveland. Defense counsel indicated that he had no objection to the State's motion.
 {¶ 23} In his fifth assignment of error, Grant essentially contends that his counsel was ineffective for not objecting to the State's motion to consolidate. Grant contends that the cases were not similar in character nor connected in any manner, so they should not have been tried together.
 {¶ 24} To reverse a conviction for ineffective assistance of counsel, the defendant must prove that counsel's performance fell below an objective standard of reasonableness and the defendant was prejudiced thereby. State v. Drummond, 111 Ohio St.3d 14, 2006-Ohio-5084, at ¶ 205, citing Strickland v. Washington (1984), 466 U.S. 668, 80 L.Ed.2d 674,104 S.Ct. 2052. Prejudice is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland at 694
 {¶ 25} Crim. R. 13 allows a court to order two or more indictments tried together if the offenses could have been joined in a single indictment. Multiple offenses may be charged in the same indictment if the offenses "are of the same or similar character, or are based on the same transaction, or are based on two *Page 12 
or more transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct." Crim. R. 8(A).
 {¶ 26} Generally, the law favors joining multiple offenses of the same or similar character in a single trial, unless joinder would prejudice the defendant. State v. Lott (1990), 51 Ohio St.3d 160, 163; Crim. R. 14. A defendant is not prejudiced by joinder if simple and direct evidence of each of the crimes joined at trial exists, such that a jury is capable of segregating the proof required for each offense, State v.Johnson, 88 Ohio St.3d 95, 109, 2000-Ohio-276, or if evidence of one offense would be admissible at a separate trial of the other offense as "other acts" evidence under Evid. R. 404(B). State v. LaMar,95 Ohio St.3d 181, 2002-Ohio-2128, at ¶ 50.
 {¶ 27} Joinder was proper here because the crimes were related in character and manner. Grant's attack on Reynolds (Case No. 494118) was similar in character and manner to his attacks on Diaz, Emerson, Lamb, Reighard, Copan, and Kincaid (Case No. 492247). He used the same stolen Jeep in all the attacks and, with the exception of Kincaid, all the attacks involved a robbery at gunpoint. All of the attacks took place within a period of 17 days and all of the victims identified Grant as the perpetrator.
 {¶ 28} Moreover, Grant has failed to demonstrate any prejudice by the joinder. The evidence in each case was simple and direct and there is no indication from the record that the jury confused the evidence as to the different *Page 13 
counts or that the jury was influenced by the cumulative effect of the joinder. In fact, the jury's not guilty verdicts on the aggravated robbery count against Diaz and the robbery count against Daniel Emerson, and guilty verdicts on the remaining counts, indicates that the jury considered each charge separately. Because the cases were properly joined, Grant's counsel was not ineffective for not objecting to the State's motion to consolidate. Grant's fifth assignment of error is overruled.
Affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 SEAN C. GALLAGHER, P.J., and PATRICIA A. BLACKMON, J., CONCUR *Page 1