[Cite as *State v. Evans*, 2012-Ohio-1562.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
JACKSON COUNTY

STATE OF OHIO,                          :
                                        :
      Plaintiff-Appellee,              :        Case No: 10CA1
                                        :
      v.                               :
                                        :        DECISION AND
DAVID W. EVANS, SR.,                    :        JUDGMENT ENTRY
                                        :
      Defendant-Appellant.             :        Filed:  April 4, 2012

_____

APPEARANCES:

Richard A. Cline, Richard Cline & Co., LLC, Columbus, Ohio, for Appellant.

Paul L. Scarsella, Jackson County Special Prosecutor, Ohio Attorney General's Office, Columbus, Ohio, for Appellee.

_____

Kline, J.:

**{¶1}** David W. Evans, Sr., (hereinafter "Evans Senior") appeals the judgment of the Jackson County Court of Common Pleas, which convicted him of numerous crimes related to three different murder-for-hire conspiracies.  Before addressing Evans Senior's arguments on appeal, we find that his conviction for Count Five (conspiracy to commit aggravated murder) is contrary to law.  Therefore, we notice plain error and vacate Evans Senior's conviction for Count Five.  Accordingly, all of Evans Senior's arguments related to Count Five are moot.

**{¶2}** On appeal, Evans Senior first contends that the trial court erred by not ordering a separate trial for Counts Eleven and Twelve.  Because Evans Senior cannot show prejudice under the joinder test, we disagree.  Evans Senior also claims that the

trial court erred by not allowing him to play a recording of a witness's prior inconsistent statement. But regardless of whether the trial court erred, Evans Senior cannot demonstrate prejudice. Therefore, we overrule the assignment of error that contains his prior-inconsistent-statement argument. Next, Evans Senior contends (1) that some of his convictions are supported by insufficient evidence and (2) that some of his convictions are against the manifest weight of the evidence. We disagree. Instead, we find substantial evidence upon which the trier of fact could have reasonably concluded that the charges against Evans Senior were proven beyond a reasonable doubt. Finally, Evans Senior contends that some of his convictions are allied offenses of similar import. We agree. Under the new allied-offenses-of-similar-import test, some of Evans Senior's convictions are subject to merger. Therefore, we affirm, in part, and reverse, in part, the judgment of the trial court, and we remand this cause to the trial court for further proceedings consistent with this opinion.

I.

**{¶3}** Evans Senior was convicted of thirteen crimes related to his involvement in three different murder-for-hire conspiracies. The first two conspiracies targeted Evans Senior's seventy-two year old wife, Carol Evans (hereinafter "Carol"). Carol survived the first conspiracy, but she did not survive the second one. The third conspiracy targeted Evans Senior's son, Carl Michael Evans (hereinafter "Michael"), who survived the murder-for-hire scheme.

A. Background

**{¶4}** Born on November 12, 1934, Evans Senior was a successful, well-known farmer and businessman in Jackson County. He owned a large family farm and various

other businesses, including a construction company and a car lot.  In 2007 and 2008,

Evans Senior started associating with people from Jackson County's drug subculture.

One of these people was Heather Speakman (hereinafter "Speakman"), a drug addict in

her late twenties.  Over the course of their relationship, Evans Senior gave Speakman

thousands of dollars, an automobile, and various other items.

{¶5}      Evans Senior and Carol were first married in 1952.  Carol strongly

disapproved of Evans Senior's relationship with Speakman.  Furthermore, Evans

Senior's family was concerned that people like Speakman were taking advantage of

him.  Evans Senior, however, did not believe that people like Speakman were a

problem.  Instead, Evans Senior believed that members of his own family were the

problem.  According to Speakman, Evans Senior perceived that his family was trying to

take control of his finances.  Speakman later testified that Evans Senior harbored

particular resentment towards Carol and Michael.

{¶6}       Evans Senior's relationship with his family became more dysfunctional in late

2007 and early 2008.  For example, heated business disagreements caused friction

between Evans Senior and Michael, and Carol moved out of the master bedroom and

into an upstairs bedroom.  Carol also began storing personal property in lockboxes that

she kept in an upstairs bathroom.  It was during this period that Evans Senior frequently

asked Speakman "to find someone to kill Carol."  Transcript at 446.

B. The First Conspiracy to Kill Carol: Randy Faught

{¶7}      Randy Faught (hereinafter "Faught") was a drug addict who had known

Speakman for some time.  One night, Faught saw Speakman with Evans Senior at

Faught's apartment complex.  At trial, Faught described his initial reaction upon seeing

Speakman with Evans Senior. "I asked somebody at [my apartment complex]; * * * I said, 'Who the hell is that?' And they said uh. . . '[Evans Senior].' I said, 'He's old enough to be your grandpa." Transcript at 280. Faught did not speak to either Evans Senior or Speakman that evening.

{¶8}     Sometime later, Evans Senior made a surprise visit to Faught's apartment. Faught was shocked to see Evans Senior that day because, in Faught's words, "he don't know me, 'ya know?" Transcript at 282. While Faught and two friends did heroin, Evans Senior explained that he needed somebody to kill Carol. As Faught later testified, "I said: 'What?' He said: 'I really need somebody to kill my wife.' He said: 'I got a divorce gonna' be comin' up.' And he said: 'I need to get rid of her.'" Transcript at 284. Evans Senior explained (1) that he would use sleeping pills to knock Carol out and (2) that Faught should be at the Evanses' house around 10:00 p.m. that night. Later that day, Evans Senior arranged for a car to be delivered to Faught.

{¶9}     At around 10:00 p.m. that evening, Evans Senior called Faught and told him that Carol was asleep. Kevin Yerian (hereinafter "Yerian") then drove Speakman and Christy Rose (hereinafter "Rose") to the Evanses' house. Once there, Evans Senior let Faught and Rose inside, where Faught was supposed to inject Carol with a syringe full of insulin. But Faught only pretended to inject Carol with insulin because, according to Faught, he never had any intention of killing her. Faught just wanted money for drugs, and Rose took $1,700 from Evans Senior's pants pocket as payment for Faught's actions.

{¶10}     The next day, Evans Senior called Faught and told him that Carol was still alive. So later that evening, Yerian drove Faught and Rose back to the Evanses'

house.  This time, however, only Faught went inside.  After Evans Senior led him to Carol, Faught again pretended to inject her with insulin.  Evans Senior then paid Faught $1,500, which Faught used to buy drugs.

**{¶11}** Evans Senior called Faught again the next morning.  And that night, Yerian once again drove Faught to the Evanses' house, where Faught once again pretended to inject Carol with insulin.  This time, however, Evans Senior paid Faught approximately $1,200.  (At trial, Yerian's testimony somewhat conflicted with Faught's.  For example, Yerian testified that he drove Faught to a house in the country two-or-three times, but not three nights in a row.  Yerian also claimed that he drove his own car, not the car supplied to Faught by Evans Senior.)

**{¶12}** For his participation in the Faught murder-for-hire conspiracy, Evans Senior was charged with conspiracy to commit aggravated murder (Count Six of the indictment).  Faught pled guilty to extortion and was sentenced to five years in prison.

### C.  The Second Conspiracy to Kill Carol: Terry Vance

**{¶13}** Speakman introduced Evans Senior to Terry Vance (hereinafter "Vance"), another drug addict with a criminal record.  Evans Senior offered Vance $50,000 to kill Carol because, as Vance later testified, she "was divorcin' [Evans Senior] and wanted to take everything that he had."  Transcript at 616.  After Vance agreed to kill Carol, Evans Senior gave him a car and a key to the Evanses' house.

**{¶14}** A few days later, Vance met up with Evans Senior and Speakman in South Carolina.  While there, they discussed the plan to kill Carol.  For example, Evans Senior described the layout of the Evanses' house, including the location of the lockboxes in the upstairs bathroom.  (Vance testified that he was supposed to take these lockboxes

as payment for murdering Carol.)  On March 25, 2008, Evans Senior drove Vance back to Ohio.

**{¶15}** In the interim, Evans Senior had arranged for a Chevy Cavalier to be delivered to a truck stop off Route 35.  Evans Senior dropped Vance off at the truck stop, and Vance drove off in the Cavalier.

**{¶16}** Shortly after midnight on March 26, 2008, Vance drove the Cavalier to the Evanses' house and unlocked the front door with Evans Senior's key.  Vance then went upstairs and entered Carol's bedroom.  Carol saw Vance and reached for a gun.  But before Carol could get it, Vance wrapped a piece of commercial extension cord around her neck.  Two minutes later, Carol was dead.  Vance left after taking Carol's gun, the lockboxes, and Carol's jewelry box.

**{¶17}** Vance abandoned the Cavalier at a "Park-n-Ride" on State Route 32.  Eventually, the police discovered the Cavalier and learned that it was registered to Evans Senior's car lot.  The police found an earring inside the Cavalier, and DNA tests confirmed that the earring had belonged to Carol.  Vance's DNA was also found on the Cavalier's steering wheel.

**{¶18}** On March 30, 2008, Lieutenant Jim Manering (hereinafter "Lt. Manering") interviewed Evans Senior.  During this interview, Evans Senior said that he went down to South Carolina with his son, Dave Evans Jr., (hereinafter "Evans Junior") just before Carol's murder.  Evans Senior did not mention either Vance or Speakman during the March 30, 2008 interview.

**{¶19}** On April 7, 2008, Evans Senior reported that the Cavalier was stolen.  By this time, however, police officers had already discovered the vehicle at the Park-n-Ride.

**{¶20}** For his participation in the Vance murder-for-hire conspiracy, Evans Senior was charged with aggravated murder under R.C. 2903.01(A) (Count One of the indictment), aggravated murder under R.C. 2903.01(B) (Count Two), murder under R.C. 2903.02(A) (Count Three), murder under R.C. 2903.02(B) (Count Four), conspiracy to commit aggravated murder (Count Five), complicity to commit aggravated burglary (Count Seven), and complicity to commit aggravated robbery (Count Eight). For reporting that the Cavalier was stolen, Evans Senior was charged with falsification (Count Thirteen). Finally, Evans Senior was charged with two counts of obstruction of justice -- one count for giving Vance the Cavalier (Count Fourteen), and one count for lying to Lt. Manering during the March 30, 2008 interview (Count Fifteen).

**{¶21}** For his participation in the murder-for-hire conspiracy, Vance pled guilty to multiple crimes and was sentenced to eighteen years in prison. Speakman also pled guilty to multiple crimes, including conspiracy to commit aggravated murder, and received a twenty-year prison sentence.

### D. The Conspiracy to Kill Michael: David Hafer

**{¶22}** By July 2009, Evans Senior had been arrested and placed in the Jackson County jail. While there, he met another inmate named David Hafer (hereinafter "Hafer"). Evans Senior and Hafer initially talked about life in jail and various things they had in common. Eventually, however, Evans Senior asked Hafer to kill Michael. Hafer told his lawyer about the murder-for-hire request, and Hafer's attorney soon informed the authorities.

**{¶23}** Evans Senior passed several notes to Hafer about the murder-for-hire plan. (A handwriting expert testified that Evans Senior wrote these notes.) Before Hafer was

to be released from jail, he asked Evans Senior to put some money in Hafer's commissary account. As Hafer later testified, "I told [Evans Senior] that I would need that money to…to get on my feet, you know, have some money to get started with what he wanted me to do." Transcript at 1222. A short time later, Evans Junior put $250 in Hafer's commissary account.

**{¶24}** For his participation in the conspiracy to kill Michael, Evans Senior was charged with conspiracy to commit murder (Count Eleven of the indictment) and conspiracy to commit aggravated murder (Count Twelve).

### E. Relevant Issues From Evans Senior's Trial

**{¶25}** Evans Senior faced a fifteen-count indictment. Under Crim.R. 14, Evans Senior moved for a separate trial on Counts Eleven and Twelve (the counts related to the conspiracy to kill Michael). The trial court, however, denied Evans Senior's motion.

**{¶26}** Faught, Vance, Speakman, Hafer, and Lt. Manering, among others, testified against Evans Senior. While cross-examining Speakman, Evans Senior asked to play a recording of a statement that Speakman had made to her sister, Mandy Baisden (hereinafter "Baisden"). During a conversation at the police station, Speakman told Baisden that Vance was supposed to kill Evans Senior so that Speakman and Vance could get all of Evans Senior's money. But at trial, Speakman denied that there was a plan to kill Evans Senior. Because Speakman's prior statement was inconsistent with her testimony, Evans Senior asked to play a recording of the statement that Speakman made to Baisden. The trial court, however, denied Evans Senior's request.

**{¶27}** Following a twelve-day trial, the jury found Evans Senior guilty of Counts One (aggravated murder), Two (complicity to aggravated murder), Three (murder), Four

(complicity to murder), Five (conspiracy to commit aggravated murder), Six (conspiracy to commit aggravated murder), Seven (complicity to commit aggravated burglary), Eight (complicity to commit aggravated robbery), Eleven (conspiracy to commit murder), Twelve (conspiracy to commit aggravated murder), Thirteen (falsification), Fourteen (obstructing justice), and Fifteen (obstructing justice). The jury acquitted Evans Senior of Count Nine (conspiracy to commit arson), and the state dismissed Count Ten (engaging in a pattern of corrupt activity).

## F. Evans Senior's Sentence

**{¶28}** For Count One, the trial court imposed a sentence of life in prison with parole eligibility at twenty-five years. The trial court ordered that the sentences for Counts Two, Three, Four, Five, Six, Seven, Eight, Thirteen, Fourteen, and Fifteen be served concurrently to the sentence for Count One. The trial court sentenced Evans Senior to a ten-year prison term for Count Eleven and a ten-year prison term for Count Twelve. However, the trial court ordered that "[t]he sentences for Counts Eleven (11) and Twelve (12) are to be served concurrently to each other but consecutive to all other counts." January 27, 2010 Order on Sentencing.

## G. Assignments of Error

**{¶29}** Evans Senior appeals and asserts the following four assignments of error: I. "THE TRIAL COURT ERRED WHEN IT DENIED THE DEFENSE MOTION TO SEVER COUNTS, AND THUS DENIED MR. EVANS A FAIR TRIAL AND DUE PROCESS OF LAW." II. "THE TRIAL COURT ERRED IN LIMITING THE CROSS-EXAMINATION OF A CRITICAL PROSECUTION WITNESS, AND THUS DENIED MR. EVANS' FEDERAL AND STATE CONSTITUTIONAL RIGHT TO CONFRONT HIS ACCUSER." III. "THE

TRIAL COURT ERRED IN DENYING THE DEFENSE MOTIONS FOR JUDGMENT OF ACQUITTAL UNDER RULE 29, OHIO RULES OF CRIMINAL PROCEDURE, AT THE CLOSE OF THE STATE'S CASE.  IN THE ALTERNATIVE, THE JURY VERDICTS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."  And, IV. "THE TRIAL COURT ERRED WHEN IT FAILED TO MERGE VARIOUS COUNTS OF CONVICTION THAT WERE ALLIED OFFENSES OF SIMILAR IMPORT."

II.

**{¶30}**     Before addressing his assignments of error, we choose to notice plain error in relation to Evans Senior's conviction and sentence for Count Five (conspiracy to commit aggravated murder).

**{¶31}**     Pursuant to Crim.R. 52(B), we may notice plain errors or defects affecting substantial rights.  "Inherent in the rule are three limits placed on reviewing courts for correcting plain error."  *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, ¶ 15.

> "First, there must be an error, *i.e.*, a deviation from the legal rule. * * * Second, the error must be plain.  To be 'plain' within the meaning of Crim.R. 52(B), an error must be an 'obvious' defect in the trial proceedings. * * * Third, the error must have affected 'substantial rights.'  [The Supreme Court of Ohio has] interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial."  (Omissions in original.)  *Id.* at ¶ 16, quoting *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002).

We will notice plain error "only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus. And "[r]eversal is warranted only if the outcome of the trial clearly would have been different absent the error." *State v. Hill*, 92 Ohio St.3d 191, 203, 749 N.E.2d 274 (2001), citing *Long* at paragraph two of the syllabus.

**{¶32}** We find that the trial court committed plain error by convicting Evans Senior of Count Five (conspiracy to commit aggravated murder). "When a person is convicted of committing or attempting to commit a specific offense or of complicity in the commission of or attempt to commit the specific offense, the person shall not be convicted of conspiracy involving the same offense." R.C. 2923.01(G). Here, Evans Senior was convicted of aggravated murder for his participation in the events surrounding Carol's death -- i.e., the Vance conspiracy. But he was also convicted of *conspiracy* to commit aggravated murder for his participation in the same series of events. Under R.C. 2923.01(G), this result is contrary to law.

**{¶33}** Therefore, even though Evans Senior did not raise this argument, we choose to recognize plain error and vacate Evans Senior's conviction for conspiracy to commit aggravated murder under Count Five. All of Evans Senior's arguments related to Count Five are now moot, and we will not address these arguments on appeal. *See* App.R. 12(A)(1)(c).

III.

**{¶34}** In his first assignment of error, Evans Senior contends that the trial court erred by denying his Crim.R. 14 motion for a separate trial on Counts Eleven and Twelve (the counts related to the conspiracy to kill Michael).

**{¶35}** "We review the trial court's decision on a motion to sever under an abuse of discretion standard." *State v. Heflin*, 6th Dist. No. L-10-1268, 2011-Ohio-4134, ¶ 12, citing *State v. Lott*, 51 Ohio St.3d 160, 163, 555 N.E.2d 293 (1990). An abuse of discretion connotes more than a mere error of judgment; it implies that the court's attitude is arbitrary, unreasonable, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

**{¶36}** Under Crim.R. 8(A),

> Two or more offenses may be charged in the same
> indictment, information or complaint in a separate count for
> each offense if the offenses charged, whether felonies or
> misdemeanors or both, are of the same or similar character,
> or are based on the same act or transaction, or are based on
> two or more acts or transactions connected together or
> constituting parts of a common scheme or plan, or are part
> of a course of criminal conduct.

"Nevertheless, sometimes it may be necessary to require separate trials to prevent prejudice to the defendant." *Heflin* at ¶ 11; *see also* Crim.R. 14. "On appeal, the burden is on the defendant to show that he was prejudiced by the trial court's refusal to sever the counts in the indictment." *Heflin* at ¶ 12.

> The state may negate the defendant's claim of prejudice by
> demonstrating either of the following: (1) that the evidence to
> be introduced relative to one offense would be admissible in
> the trial on the other, severed offense, pursuant to Evid.R.

404(B); or (2) that, regardless of the admissibility of such

evidence, the evidence relating to each charge is simple and

direct.  The former is generally referred to as the "other acts

test," while the latter is known as the "joinder test."  *State v.*

*Quinones*, 11th Dist. No. 2003-L-015, 2005-Ohio-6576, ¶ 39,

citing *State v. Franklin*, 62 Ohio St.3d 118, 122, 580 N.E.2d

1 (1991); *Lott* at 163.

**{¶37}** Here, we find that the trial court did not abuse its discretion by denying Evans

Senior's motion to sever.  Specifically, we find that the evidence relating to each charge

is simple and direct.  Black's Law Dictionary defines "direct evidence" as "[e]vidence

that is based on personal knowledge or observation and that, if true, proves a fact

without inference or presumption."  Black's Law Dictionary (9th Ed.2009).  Eyewitness

testimony is a form of direct evidence.  *See State v. Haden*, 6th Dist. No. S-95-067,

1996 WL 532329, *2 (Sept. 20, 1996).  And here, the state introduced easily

understandable eyewitness testimony in relation to each charge against Evans Senior.

For example, Faught testified that Evans Senior hired him to kill Carol; Vance testified

about Evans Senior's involvement in the murder-for-hire scheme that resulted in Carol's

death; Hafer testified that Evans Senior hired him to kill Michael; and so on.  After

reviewing the record, we believe that the evidence against Evans Senior is relatively

uncomplicated.  Therefore, he cannot show prejudice under the joinder test.  And

because Evans Senior cannot show prejudice under the joinder test, we need not

consider his argument under the other-acts test.  *See State v. Sullivan*, 10th Dist. No.

10AP-997, 2011-Ohio-6384, ¶ 23.

**{¶38}** Furthermore, Evans Senior's acquittal on Count Nine (conspiracy to commit arson) rebuts his claim of prejudice. *See, e.g.*, *State v. Grant*, 8th Dist. Nos. 90465 & 90466, 2008-Ohio-3970, ¶ 28; *State v. Pryor*, 5th Dist. No. 2007-CA-00166, 2008-Ohio-1249, ¶ 68; *State v. Barstow*, 4th Dist. No. 02CA27, 2003-Ohio-7336, ¶ 55 (Evans, J., with two judges concurring in judgment only). Because the jury acquitted Evans Senior of one of the charges, we cannot find that the jury was confused by the evidence, overwhelmed by the number of counts, or influenced by the cumulative effect of the joinder.

**{¶39}** Accordingly, we overrule Evans Senior's first assignment of error.

IV.

**{¶40}** In his second assignment of error, Evans Senior contends that the trial court erred by not allowing him to play a recording of Speakman's prior inconsistent statement about the plan to kill Evans Senior.

**{¶41}** "'The admission or exclusion of relevant evidence rests within the sound discretion of the trial court[,]' and we may not reverse unless there has been an abuse of that discretion." *State v. Boyd*, 4th Dist. No. 09CA14, 2010-Ohio-1605, ¶ 27, quoting *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987), paragraph two of the syllabus.

**{¶42}** Under Evid.R. 613(B),

> Extrinsic evidence of a prior inconsistent statement by a
> witness is admissible if both of the following apply:
> (1) If the statement is offered solely for the purpose of
> impeaching the witness, the witness is afforded a prior

opportunity to explain or deny the statement and the

opposite party is afforded an opportunity to interrogate the

witness on the statement or the interests of justice otherwise

require;

(2) The subject matter of the statement is one of the

following:

(a) A fact that is of consequence to the determination of the

action other than the credibility of a witness;

(b) A fact that may be shown by extrinsic evidence under

Evid.R. 608(A), 609, 616(A), 616(B) or 706;

(c) A fact that may be shown by extrinsic evidence under the

common law of impeachment if not in conflict with the Rules

of Evidence.

**{¶43}** In deciding Evans Senior's second assignment of error, we will not address

whether the trial court erred in relation to Speakman's statement. Instead, we will

address whether Evans Senior can possibly demonstrate prejudice. "It is axiomatic that

in order for there to be reversible error, there must be prejudice to the appellant." *State

v. Rembert*, 5th Dist. No. 04 CA 66, 2005-Ohio-4718, ¶ 15, citing *State v. Dean*, 94 Ohio

App. 540, 16 N.E.2d 767 (1st Dist.1953); *Tingue v. State*, 90 Ohio St. 368, 108 N.E. 222

(1914). And here, even if the trial court erred, we fail to see how Evans Senior was

prejudiced.

A.

**{¶44}** We agree that Speakman's statement about the plan to kill Evans Senior is inconsistent with her testimony. At trial, Evans Senior's counsel asked Speakman the following question: "Wasn't it your plan that you would have Carol killed, and when [Evans Senior] got the money [Evans Senior] would be killed?" Transcript at 546. Speakman replied, "[n]o." *Id.* But during their conversation at the police station, Speakman told Baisden that Vance "was suppose[d] to kill [Evans Senior]. Then [Speakman] and [Vance were] going to have all [of Evans Senior's] money." Transcript at 2281. Therefore, we agree that Speakman's statement to her sister is a prior inconsistent statement.

**{¶45}** However, we disagree with Evans Senior as to what this inconsistency supposedly represents. Evans Senior argues that the inconsistency between Speakman's statement and her testimony demonstrates a contradiction between the two plans -- (1) the plan to kill Carol and (2) the plan to kill Evans Senior. As Evans Senior claims, Speakman's prior "statement was directly in conflict with the story told * * * in her direct examination that the plan was to have Terry Vance kill [Evans Senior]." Merit Brief of Defendant-Appellant at 17. But the crux of Evans Senior's argument ignores an important part of Speakman's statement to Baisden. That is, the prior statement is consistent with Speakman's testimony about the plan to kill Carol.

**{¶46}** As Baisden testified:

**{¶47}** "Q. [Speakman] also told you during that conversation about a plan that [Evans Senior] had to have Carol killed?

**{¶48}** "A. Yes.

**{¶49}** "Q. That [Evans Senior] took [Vance] up there to kill Carol?

**{¶50}** "A. She didn't know exactly why they were going there but that's under her…um…what she was thinking that's what was going to happen but she did not know how to stop it.

**{¶51}** "Q. Okay. So regardless of whether or not [Speakman] and [Vance] had this other plan the Defendant Dave Evans still planned to have his wife killed is what your sister told you that day isn't it?

**{¶52}** "A. Yes." Transcript at 2282-2283.

**{¶53}** Therefore, despite the inconsistency, we reject the crux of Evans Senior's argument. Clearly, Speakman's prior statement is *not* inconsistent regarding the plan to kill Carol. And although there is an inconsistency regarding a plan to kill Evans Senior, that plan is irrelevant to Evans Senior's involvement in Carol's murder. Even under the alleged plan to kill Evans Senior, Vance was supposed to kill Carol first. Therefore, we disagree with the crux of Evans Senior's argument that Speakman's prior inconsistent statement demonstrates a conflict between the two plans.

B.

**{¶54}** Accordingly, we fail to see how Evans Senior suffered any prejudice under his second assignment of error. First, as we discussed, Speakman's prior inconsistent statement does not make Evans Senior's involvement in the plan to kill Carol any less likely. Second, Evans Senior had the opportunity to cross-examine Speakman about the prior inconsistent statement. And third, the jury heard about Speakman's statement to Baisden during Baisden's testimony. Therefore, the jury had the ability to consider Speakman's prior inconsistent statement when evaluating her credibility. Simply put, Evans Senior cannot demonstrate any prejudice under his prior-inconsistent-statement

argument.  As a result, we overrule his second assignment of error regardless of whether the trial court erred.

V.

**{¶55}** In his third assignment of error, Evans Senior contends that the trial court should have granted his Crim.R. 29 motions for acquittal as to Counts One-through-Four, Six-through-Eight, Eleven, and Twelve.  Alternatively, Evans Senior contends that these particular convictions are against the manifest weight of the evidence.  Evans Senior does not, however, make any arguments related to Counts Thirteen, Fourteen, or Fifteen.

**{¶56}** "We review the trial court's denial of a defendant's Crim.R. 29 motion for acquittal for sufficiency of the evidence." *State v. Turner*, 4th Dist. No. 08CA3234, 2009-Ohio-3114, ¶ 17, citing *State v. Bridgeman*, 55 Ohio St.2d 261, 381 N.E.2d 184 (1978), syllabus.  However, "[w]hen an appellate court concludes that the weight of the evidence supports a defendant's conviction, this conclusion necessarily includes a finding that sufficient evidence supports the conviction." *State v. Puckett*, 191 Ohio App.3d 747, 2010-Ohio-6597, 947 N.E.2d 730, ¶ 34 (4th Dist.).  "Thus, a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." *Lakewood v. Dorton*, 8th Dist. No. 81043, 2003-Ohio-1719, ¶ 32.  As a result, we will first address whether Evans Senior's convictions are against the manifest weight of the evidence.

**{¶57}** When determining whether a criminal conviction is against the manifest weight of the evidence, we "will not reverse a conviction where there is substantial evidence upon which the [trier of fact] could reasonably conclude that all the elements

of an offense have been proven beyond a reasonable doubt." *State v. Eskridge*, 38 Ohio St.3d 56, 526 N.E.2d 304 (1988), paragraph two of the syllabus. *See also State v. Smith*, 4th Dist. No. 06CA7, 2007-Ohio-502, ¶ 41. We "must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial granted." *Id.*, citing *State v. Garrow*, 103 Ohio App.3d 368, 370-371, 659 N.E.2d 814 (4th Dist.1995); *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). But "[o]n the trial of a case, * * * the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.

**{¶58}** Evans Senior advances two arguments under his third assignment of error. We will address these arguments separately.

### A. Trespassing and Counts Two, Four, and Seven

**{¶59}** First, Evans Senior argues that Vance did not trespass on Evans Senior's property. As a result, Evans Senior claims that the state did not prove any of the claims that involved aggravated burglary as an essential element -- that is, Counts Two, Four, and Seven. (Evans Senior also claims that Count Six "require[d] the state to prove that [he] conspired to commit or was complicit in the commission of an aggravated burglary[.]" Merit Brief of Defendant-Appellant at 19. But this is not so. For count six, Evans Senior was convicted of violating R.C. 2923.01 and R.C. 2903.01(A). Under R.C. 2903.01(A), "No person shall purposely, and with prior calculation and design,

cause the death of another or the unlawful termination of another's pregnancy." Clearly, R.C. 2903.01(A) does not require proof of an aggravated burglary. Therefore, as it relates to Count Six, we reject Evans Senior's aggravated-burglary argument.)

**{¶60}** R.C. 2911.11(A) is the aggravated-burglary statute, and it states that

> [n]o person, by force, stealth, or deception, shall trespass in
> an occupied structure or in a separately secured or
> separately occupied portion of an occupied structure, when
> another person other than an accomplice of the offender is
> present, with purpose to commit in the structure or in the
> separately secured or separately occupied portion of the
> structure any criminal offense, if any of the following apply: *
> * *.

**{¶61}** Under R.C. 2911.21(A)(1)'s definition of "criminal trespass," "[n]o person, without privilege to do so, shall * * * knowingly enter or remain on the land or premises of another[.]"

**{¶62}** Here, Evans Senior argues the following: Because Vance had Evans Senior's permission to be on Evans Senior's property, Vance could not have trespassed. And if Vance could not have trespassed, he could not have committed aggravated burglary. And if Vance could not have committed aggravated burglary, he could not have committed aggravated murder. *See* R.C. 2903.01(B) (including aggravated burglary as a predicate offense for aggravated murder). Therefore, according to Evans Senior, the state did not prove the counts involving either (1) aggravated burglary or (2) aggravated murder -- that is, Counts Two, Four, and Seven.

{¶63} Here, we find that Evans Senior's argument has no merit. Even if Vance had permission to enter Carol and Evans Senior's home, "the privilege of an invited guest to be on the premises is terminated if [that guest] commits a violent act." *State v. Young*, 4th Dist. No. 07CA3195, 2008-Ohio-4752, ¶ 25, citing *State v. Steffen*, 31 Ohio St.3d 111, 115, 509 N.E.2d 383 (1987). Therefore, once he attacked Carol, Vance no longer had the privilege to be in the Evanses' home -- in other words, Vance became a trespasser. Accordingly, because the jury could have reasonably found that Vance trespassed upon Carol and Evans Senior's property, we reject Evans Senior's trespass-related arguments.

### B. Witness Credibility and Counts One-Through-Four, Six-Through-Eight, Eleven, and Twelve

{¶64} Second, Evans Senior claims that the jury lost its way by relying on the testimony of Evans Senior's various accomplices. According to Evans Senior, "[t]he State's evidence regarding counts 1 through 8, 11, and 12 was entirely composed of the testimony of criminals who had traded their testimony for favorable treatment by law enforcement." Merit Brief of Defendant-Appellant at 21. Moreover, Evans Senior claims that some of the witnesses' testimony was "inconsistent" and "incredible."

{¶65} We recognize that many of the witnesses who testified against Evans Senior are admitted criminals who participated in the various murder-for-hire schemes.

> However, "the cautious exercise of the discretionary power
> of a court of appeals to find that a judgment is against the
> manifest weight of the evidence requires that substantial
> deference be extended to the factfinder's determinations of

credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness. * * *Accordingly, [t]his court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of facts lost its way in arriving at its verdict." *State v. Breidenbach*, 4th Dist. No. 10CA10, 2010-Ohio-4335, ¶ 19, quoting *State v. Rhines*, 2d Dist. No. 23486, 2010-Ohio-3117, ¶ 39 (alterations sic).

**{¶66}** Here, we will defer to the jury's judgment regarding witness credibility. The jury was well aware of these witnesses' respective criminal histories. Nevertheless, the jury chose to believe these witnesses and find that Evans Senior participated in the various murder-for-hire schemes. After reviewing the record, we cannot find that the jury lost its way by relying on the testimony of these witnesses.

**{¶67}** Finally, "[t]he jury, sitting as the trier of fact, is free to believe all, part or none of the testimony of any witness who appears before it." *State v. Daniels*, 4th Dist. No. 11CA3423, 2011-Ohio-5603, ¶ 23. Therefore, as it relates to any inconsistent testimony, the jury was free to believe the testimony it found most credible.

**{¶68}** Accordingly, we reject Evans Senior's witness-credibility arguments.

C.

**{¶69}** In conclusion, we reject both of the arguments under Evans Senior's third assignment of error. Furthermore, after reviewing the record, we find that Evans

Senior's convictions for Counts One-through-Four, Six-through-Eight, Eleven, and

Twelve are not against the manifest weight of the evidence.  This is so because the jury

could have reasonably concluded that Evans Senior's guilt had been proven beyond a

reasonable doubt.  And because Evans Senior's convictions are not against the

manifest weight of the evidence, we also find that his convictions are supported by

sufficient evidence.  Accordingly, we overrule Evans Senior's third assignment of error.

VI.

**{¶70}**      In his fourth assignment of error, Evans Senior contends that some of his

convictions are allied offenses of similar import.

**{¶71}**      Under Ohio law, "Where the same conduct by defendant can be construed to

constitute two or more allied offenses of similar import, the indictment or information

may contain counts for all such offenses, but the defendant may be convicted of only

one."  R.C. 2941.25(A).  However,

> [w]here the defendant's conduct constitutes two or more
>
> offenses of dissimilar import, or where his conduct results in
>
> two or more offenses of the same or similar kind committed
>
> separately or with a separate animus as to each, the
>
> indictment or information may contain counts for all such
>
> offenses, and the defendant may be convicted of all of them.
>
> R.C. 2941.25(B).

This statutory language "codifie[s] the judicial doctrine of merger" and "prohibit[s] the

'cumulative punishment of a defendant for the same criminal act where his conduct can

be construed to constitute two statutory offenses, when, in substance and effect, only

one offense has been committed.'"  *State v. Ware*, 63 Ohio St.2d 84, 86, 406 N.E.2d

1112 (1980), quoting *State v. Roberts*, 62 Ohio St.2d 170, 172-173, 405 N.E.2d 247

(1980).

**{¶72}**    The Supreme Court of Ohio recently articulated a new test for determining

whether merger is appropriate.  *See State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-

6314, 942 N.E.2d 1061, ¶ 44.

> In determining whether offenses are allied offenses of similar
>
> import under R.C. 2941.25(A), the question is whether it is
>
> possible to commit one offense and commit the other with
>
> the same conduct, not whether it is possible to commit one
>
> *without* committing the other.  [*State v.*] *Blankenship*, 38
>
> Ohio St.3d [116,] 119, 526 N.E.2d 816 [1988] (Whiteside, J.,
>
> concurring) ("It is not necessary that both crimes are always
>
> committed by the same conduct but, rather, it is sufficient if
>
> both offenses *can be* committed by the same conduct.  It is a
>
> matter of possibility, rather than certainty, that the same
>
> conduct will constitute commission of both offenses."
>
> [Emphasis sic]). * * *
>
>     If the multiple offenses can be committed by the same
>
> conduct, then the court must determine whether the offenses
>
> were committed by the same conduct, i.e., "a single act,
>
> committed with a single state of mind."  [*State v.*] *Brown*, 119

Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, at ¶ 50

(Lanzinger, J., dissenting).

If the answer to both questions is yes, then the offenses

are allied offenses of similar import and will be merged.

Conversely, if the court determines that the commission

of one offense will *never* result in the commission of the

other, or if the offenses are committed separately, or if the

defendant has separate animus for each offense, then,

according to R.C. 2941.25(B), the offenses will not merge.

(Emphasis sic.)  *Johnson*, 128 Ohio St.3d 153, 2010-Ohio-

6314, 942 N.E.2d 1061, ¶ 48-51.

**{¶73}**     The Supreme Court of Ohio decided *Johnson* after Evans Senior filed this

appeal.  As a result, Evans Senior has not made any arguments based on the new

*Johnson* test.  Furthermore, under the old test, Evans Senior made merger arguments

as to just seven-of-his-thirteen convictions.  Evans Senior could have requested a leave

of court to make additional arguments based on *Johnson*, but he chose not to do so.

*See* App.R. 16(C).  Nevertheless, we recognize that the merger doctrine implicates

fundamental constitutional rights.  *See generally State v. Moore*, 110 Ohio App.3d 649,

652, 675 N.E.2d 13 (1st. Dist.1996) (internal citations omitted) ("The Double Jeopardy

Clauses of the Fifth Amendment to the United States Constitution and Section 10,

Article I of the Ohio Constitution protect the accused from being put in jeopardy twice for

the same offense.  These provisions protect an individual against successive

punishments as well as successive prosecutions for the same offense.").  Furthermore,

because of the constitutional interests involved, the failure to merge appropriate offenses results in plain error. *See, e.g.*, *State v. Sutphin*, 8th Dist. No. 96015, 2011-Ohio-5157, ¶ 62. Accordingly, we will review *all* of Evans Senior's twelve convictions under the *Johnson* test.

**{¶74}** For ease of analysis, we will divide Evans Senior's twelve convictions into three separate categories: (1) the crimes related to Carol's murder, (2) the crimes related to the plot to kill Michael, and (3) the crimes related to falsification and obstructing justice. Initially, we find that Evans Senior's crimes from one category were necessarily committed with a separate animus from his crimes in the other two categories. As a result, a conviction from any one of these categories will not merge with a conviction from a different category (e.g., a conviction related to Carol's murder cannot merge with a conviction related to the plot to kill Michael). Therefore, we must determine the following: (1) whether the seven convictions related to Carol's murder are subject to merger, (2) whether the two convictions related to the plot to kill Michael are subject to merger, and (3) whether the three convictions related to falsification and obstructing justice are subject to merger.

A. Carol's Murder

**{¶75}** The seven convictions related to Carol's murder are aggravated murder under R.C. 2903.01(A) (Count One), complicity to aggravated murder under R.C. 2903.01(B) (Count Two), murder under R.C. 2903.02(A) (Count Three), complicity to murder under R.C. 2903.02(B) (Count Four), conspiracy to commit aggravated murder under R.C. 2923.01 (Count Six), complicity to commit aggravated burglary under R.C. 2911.11(A)

(Count Seven), and complicity to commit aggravated robbery under R.C. 2911.01(A)(3) (Count Eight).

**{¶76}** Initially, we find that Evans Senior committed Count Six (conspiracy to commit aggravated murder) with a separate animus from the other six offenses. Count Six relates to the murder conspiracy involving Evans Senior and Faught. Counts One, Two, Three, Four, Seven, and Eight, however, relate to the conspiracy involving Evans Senior and Vance. Although these two conspiracies shared a common goal, they had different participants and different plans. Most importantly, Evans Senior is the only person who was involved in both conspiracies. Therefore, because there were two separate and distinct conspiracies, we find that Evans Senior did not commit Count Six with the same conduct as Counts One, Two, Three, Four, Seven, and Eight. Accordingly, we find that Count Six is not subject to merger.

**{¶77}** We find that the remaining six offenses related to Carol's murder are allied offenses of similar import and should be merged. Here, the offenses described in Counts One, Two, Three, Four, Seven, and Eight *can* be committed by the same conduct. *See, e.g.*, *State v. Wright*, 2d Dist. No. 24276, 2011-Ohio-4874, ¶ 73-77 (finding that aggravated robbery and aggravated burglary can be committed by the same conduct); *State v. Abdi*, 4th Dist. No. 09CA35, 2011-Ohio-3550, ¶ 39 (finding that aggravated robbery and murder under R.C. 2903.02(B) can be committed by the same conduct); *State v. McClendon*, 2d Dist. No. 23558, 2011-Ohio-5067, ¶ 8 (noting that the trial court merged a murder conviction under R.C. 2903.02(A) with a murder conviction under R.C. 2903.02(B)); *State v. Brenson*, 5th Dist. No. 09-CA-18, 2011-Ohio-1880, ¶ 11 (finding that multiple aggravated murder counts involving the same victim are subject

to merger); *State v. Bickerstaff*, 7th Dist. No. 09 JE 33, 2011-Ohio-1345, ¶ 76 ("The trial court * * * committed plain error by failing to merge [the defendant's] convictions for murder and aggravated murder.").

**{¶78}** Additionally, the evidence demonstrates that Evans Senior committed Counts One, Two, Three, Four, Seven, and Eight with the same conduct -- i.e., as a single act, committed with a single state of mind. Under Evans Senior and Vance's plan, Vance was to enter the Evanses' house, kill Carol, and take the lockboxes. Therefore, Counts One, Two, Three, Four, Seven, and Eight necessarily occurred as a result of the plan to kill Carol. Accordingly, Counts One, Two, Three, Four, Seven, and Eight are allied offenses of similar import and should merge for purposes of sentencing. On remand, the state may determine whether to pursue sentencing for Count One, Two, Three, Four, Seven, or Eight. *See State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, ¶ 25.

### B. The Plot to Kill Michael (Counts Eleven and Twelve)

**{¶79}** Counts Eleven and Twelve relate to the plot to kill Michael. In Count Eleven, Evans Senior was convicted of conspiracy to commit murder. And in Count Twelve, Evans Senior was convicted of conspiracy to commit aggravated murder. We find that these counts should merge. *See Bickerstaff* at ¶ 76. Clearly, these offenses can be committed by the same conduct. *Id.* Moreover, the evidence demonstrates that Evans Senior committed both of these offenses by hiring Hafer to kill Michael. As a result, we find that Counts Eleven and Twelve were committed as a single act, with a single state of mind. Accordingly, Counts Eleven and Twelve are allied offenses of similar import

and should merge for purposes of sentencing.  On remand, the state may determine whether to pursue sentencing for either Count Eleven or Twelve.  *See Whitfield* at ¶ 25.

## C. Falsification and Obstructing Justice

**{¶80}**    We find that Count Thirteen (falsification), Count Fourteen (obstructing justice under R.C. 2921.32(A)(2)), and Count Fifteen (obstructing justice under R.C. 2921.32(A)(5)) should not merge.  Even if these offenses could be committed by the same conduct, the evidence demonstrates that Evans Senior committed each of these crimes with a separate animus.  Evans Senior committed falsification when he reported the Chevrolet Cavalier stolen on April 7, 2008.  Next, Evans Senior committed obstructing justice under R.C. 2921.32(A)(2) by providing Vance with the Chevrolet Cavalier on March 25, 2008.  And finally, Evans Senior committed obstructing justice under R.C. 2921.32(A)(5) when he lied to Lt. Manering during the March 30, 2008 interview.  Clearly, Evans Senior engaged in separate conduct for each of these crimes.  Therefore, Evans Senior had a separate animus for each offense, and Counts Thirteen, Fourteen, and Fifteen are not subject to merger.

## D. Summary

**{¶81}**    In summary, we find the following: Evans Senior's convictions under Counts One, Two, Three, Four, Seven, and Eight are allied offenses of similar import.  Accordingly, we vacate Evans Senior's sentences for Counts One, Two, Three, Four, Seven, and Eight.  On remand, the state may choose which of these counts to pursue for sentencing.  Additionally, Evans Senior's convictions under Counts Eleven and Twelve are allied offenses of similar import.  Accordingly, we vacate Evans Senior's sentences for Counts Eleven and Twelve.  Again, on remand, the state may choose to

pursue either Count Eleven or Twelve for sentencing. Finally, none of Evans Senior's other convictions are allied offenses of similar import.

**{¶82}** For the foregoing reasons, we sustain, in part, Evans Senior's fourth assignment of error.

VII. Conclusion

**{¶83}** In conclusion, we vacate Evans Senior's conviction for Count Five (conspiracy to commit aggravated murder). We also overrule Evans Senior's first, second, and third assignments of error. However, we sustain, in part, Evans Senior's fourth assignment of error. First, we find that Counts One, Two, Three, Four, Seven, and Eight are allied offenses of similar import. As such, they are subject to merger for purposes of sentencing. Next, we find that Counts Eleven and Twelve are allied offenses of similar import. As such, they are subject to merger for purposes of sentencing. And finally, we find that Counts Six, Thirteen, Fourteen, and Fifteen are not subject to merger. Therefore, we do not disturb Evans Senior's sentences for Counts Six, Thirteen, Fourteen, and Fifteen.

**{¶84}** Accordingly, we affirm, in part, and reverse, in part, the judgment of the trial court, and we remand this cause to the trial court for further proceedings consistent with this opinion.

**JUDGMENT AFFIRMED, IN PART, REVERSED, IN PART,<br>AND CAUSE REMANDED.**

Harsha, J., Concurring in part and Dissenting in part:

**{¶85}**     I concur in judgment and opinion with the following exceptions.  I agree Evans cannot show prejudice in the court's decision not to admit extrinsic evidence of Speakman's prior statement to her sister.  However, I would simply reject this assignment of error on the basis that the statement did not meet the requirements of Evid.R. 613(B)(2) and thus was not admissible.

**{¶86}**     Under the fourth assignment of error, I would merge counts two, four, and seven, as requested by the appellant.  But in the absence of an argument that counts one, seven, and eight should also merge, I would not address those counts or apply plain error to them.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT BE AFFIRMED, in part, REVERSED, in part, and this CAUSE BE REMANDED to the trial court for further proceedings consistent with this opinion.  Appellant and Appellee shall pay equally the costs herein taxed.

The Court finds that there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Jackson County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.  Exceptions.

McFarland, J.:  Concurs in Judgment and Opinion.
Harsha, J.:     Concurs in Part and Dissents in Part with Opinion.


                        For the Court


                        BY:_____
                           Roger L. Kline, Judge



                    **NOTICE TO COUNSEL**


        **Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**